So we propose to have two counsel argue for a single party, which is not a good idea. We'll permit that, but we will not permit two reply to bottle arguments. I understand that, Your Honor. Mr. Burton. Yes. I represent, may it please the Court, I represent two of the defendants, in this case, Kirk National Lease and Truck and Trailer Parts Solutions, together with the other defendant, Altum. We ask this Court to reverse the District Court's preliminary injunction order for three separate reasons. On behalf of the appellants, I will be addressing the first of those reasons, which is that Ridge, Plaintiff Ridge, is a licensee of the patent in suit, lacks statutory standing. If you agree with you on that, we don't have to get to the rest of this case, right? You don't have to, but you can because… No, no, no. My question was, we don't have to. Right. You don't have to. We would submit that you can because it's a curable defect and it's not a jurisdictional defect. Yeah, I know. We'd rather issue an advisory opinion in case they cure the defect below, but assuming we're not going to do that, did they try to cure the defect below? I mean, you agree, if they bring the patent holder in, then they're standing here. Right. And Kim, we're talking about statutory standing. Right. Which we need some better work for because it gets confused with actual Article III standing, but for the purpose of this, I guess we can assume that that's what we're talking about. Did they try below to bring in the patentee? No, not at all. What they did was post-complaint was submit a statement by the patent owner, the licensor, Cold Chain, that says, Cold Chain reaffirms that it retains the right to sue, which we argue is a dispositive point here, but it's not going to pursue these particular defendants in this lawsuit. Well, that doesn't sound like it cures the standing. It doesn't. That's what you need. That has to be joined, right? Right. It can't be involuntarily joined. They didn't file a motion to join at all? Excuse me? They didn't file any motion to join? No. What happened is we, KNL, raised the issue of lack of a standing because of a necessary party and therefore the court shouldn't get to the preliminary injunction issue and the co-defendant, Alton, filed a motion under Rule 19 to say you should join the party, which Appley resisted at the time. And the court agreed and said there was no standing, but we say that's the, there was standing, but we say that's the incorrect result here. What do our cases say about whether they can compel the patent owner to join? Well, I don't have a specific case in mind. I think the Lone Star case discusses the Rule 19 point in the most detail, which is that if the court agrees under Rule 19 that a party should be joined if feasible, then it has to order the plaintiff to join that party. And if they're reluctant, they're joined as a defendant and can be realigned by the district court as an involuntary plaintiff. But the overall issue here is that under this court's well-established case law, whether Ridge's license is a license or whether it's really an assignment, and that's because this court has held an exclusive licensee as standing under the statute, Section 281, to sue on its own without joining the licensor, only if it has been transferred all substantial rights in the patent. The license has to be tantamount to an assignment, as this court said in the Alfred E. Mann Foundation, which is not here, because among other reasons, the licensor retained the right to sue, clearly has the right to sue under Section 14 of the agreement. It's not illusory, as in some cases, because the licensor does not have an unrestricted right to sub-license. So for those reasons, we're asking the court to rule that the district court should have ruled that Plaintiff Ridge lacks statutory standing to obtain relief. So we would vacate the preliminary injunction, right? Right. And demand? Vacate the preliminary injunction, send it back with instructions that the appellee and the trial court have to join the patent owner cold chain. If there are no further questions, I will turn it over to my co-defendant's counsel for the remainder of Appellee's opening argument. Mr. Carwile. Ms. Carwile, sorry. Thank you, Your Honors. Tiffany Carwile on behalf of Defendant Altum, LLC. Your Honor, I want to address Judge Hughes, your point, or your question relating to whether the court should or can continue on with the analysis. And we would say that, yes, the court can and the court should. In looking at the district court's opinion, it is obvious that the court misunderstood how to do a proper claim construction and how to do a proper analysis of a patent case. Contrary to this court's holding in the Phillips case, that the specification is highly relevant and dispositive, the court stated that the specification is less significant. Contrary to this court's case, a similar case in Markman, that the prosecution history is of primary significance. The district court said it's not relevant. I mean, I understand you want us to look at all this, but you're asking us to make an advisory opinion. Your Honor, if you look at how the United States Supreme Court has distinguished between an appropriate opinion and an advisory opinion, it wasn't cited in the briefs because we weren't raising advisory opinion issues, but it's Rhodes v. Stewart. It's 488 U.S. 1. The court says, what makes a pronouncement a proper judicial resolution of a case or controversy rather than advisory opinion is the settling of some dispute that affects the behavior of the defendant towards the plaintiff. Your Honor, if you make a proper claim construction, it will do exactly that. It will settle the dispute here between the defendant and the plaintiff because there's not really a factual dispute. But if you make that final understanding, and it may resolve the dispute, too. It may not. It may or it may not. That's why you want us to rule on both grounds. But if it does, then we don't have to rule on this again. Your Honor, but it's highly likely that it will not resolve this dispute. Look, statutory standing is not jurisdictional, so we don't have to decide statutory standing. We could decide that there was a failure to establish infringement and that that was a defect in the preliminary injunction, right? Correct, Your Honor. And we would ask to have the court look at the district court. Are you expressing a preference for the ground of our decision? We might have a difference between the defendants. I think the ultimate preference would be to issue a decision on the claim construction because that would end the case. The district court has held in abeyance our motion to dismiss based on claim construction pending this court's decision. And so we'll likely take this court's decision into consideration in ruling on our motion to dismiss. Your Honor, with regard to the claim construction, we think there were at least three errors. And first, the error with regard to that the door cannot have a sandwich panel. If you look at the specification, well, actually the prosecution history in Colchink, they specifically said that their door, the sandwich structures of Rowan Bush, which was a patent that they were trying to distinguish, are not the same as applicants' claim structure. Rowan Bush sandwich panel structures do not include a foam insulating material forming the second outermost surface. Here, Your Honor, we have a sandwich panel. We have a thermoplastic layer with foam with a second thermoplastic layer, which was specifically disavowed by Colchink during their prosecution history and, therefore, it cannot be now used to find infringement. Just the merits of the injunction. This is the merits of the infringement claim that you want us to decide under the guise of an appeal of a preliminary injunction. That's not even a standard we would apply. We would apply whether there's a likelihood of showing infringement, not whether the claim construction is actually correct and that there is infringement. Well, to find a likelihood of infringement, you have to have a proper claim construction, Your Honor. And the district court's claim construction was nowhere near proper. But the district, I mean, you just want us to jump ahead and give up some opinion that you think the district court will follow on the merits of the infringement claim. No, we would like this court to issue a proper claim construction because the district court completely ignored this court's rulings regarding how to do a proper claim construction. And if this court does not give guidance, the court will continue to ignore this court's claim construction rulings and issue another decision that is erroneous, and we will be back up here on a second appeal, probably on a preliminary injunction, Your Honor. We have some case law that suggests that in an initial preliminary injunction, our claim construction might be, it's not the final claim construction necessarily. I think there's at least one case that I can remember where there was one claim construction in the preliminary injunction phase and a different claim construction in the final stage of the case. So, I mean, isn't what Judge Hughes is saying correct? That, you know, even if we were to say what a claim construction could be in the guise of likelihood of success, that doesn't tell you what the claim construction is for the case necessarily. Your Honor, I think in this case it would because the claim construction relies on the prosecution history, the disavowal of the door and the patent, or the alleged infringing product here. So if the court were to look at it and say, yes, they disavowed these particular elements based on the prosecution history, that would be the proper claim construction throughout the entire case because the prosecution history is not going to change. It is what it is. They disavowed a sandwich panel. They disavowed a door that is only flexible based on bridges and different zones. It specifically said that the material itself is flexible. The material here that the Alton panel and the K&L door are made of is not flexible in itself. It is rigid. It is hard. We had a demonstrative before the court that showed that, Your Honors. And I see that my time is up, so I'm going, unless there's other questions, I will... All right. Thank you, Your Honor. Mr. Tackett. Your Honors, good morning. May it please the Court, my name is Christopher Tackett here on behalf of... Why don't you try to join the patentee here? So, Your Honor, I think context is important. So we have a case where a complaint was filed because we found out about this infringement and rampant unfair competition. And the next day we're in a TRO hearing. Then we have an injunction set for 10 days later. We exchange discovery due... I don't really care about any of that. Our case law on this, there's a lot of it. And it says that you have to have all substantial rights. And if you look at the cases where we found a lack of substantial rights, it's when the patentee retains a right to sue, which is the case here, right? Honor the man factor. Your Honor, the patentee... Answer my question. No, no, no. Where do you say in name only? What I mean is that the patent, the licensor's rights are so trivial that they... The licensor doesn't have the right to sue? The licensor has the right to initiate suit and so does Ridge Corporation. But importantly, if the licensor initiates suit, Your Honor, Ridge Corporation has complete rights to control the suit and to settle it whenever they would want to. I mean, I don't know how that gets you out of our case law. They still have the right to sue. They have the right to initiate suit. That is correct, Your Honor. You can't defeat their suit by granting a sublicense because the sublicense right is limited to situations where the sublicensee is purchasing from you. Your Honor... I mean, that's the case as we found it's illusory, not because the licensee can participate or manage the suit. So I want to answer Judge Dyke's question and also speak to your question, Judge Hughes. Judge Dyke, we could eliminate suit and move it in many instances via sublicense, but I think you're correct that there is a restriction on our sublicense that's put in there by Ridge Corporation for its own purposes. The example given in Appellant's brief is that if Ultim LLC, a component manufacturer, if Ridge Corporation wanted to give a sublicense to that component manufacturer, they could not because they can only give the sublicenses to door manufacturers because the patented invention is a door. We don't want to give a sublicense to a component manufacturer that seeks to aid in competition against us. We want to exclude them, Your Honor. And if there is a suit initiated by Cold Chain instead of by Ridge Corporation, Ridge Corporation has the complete power to settle that suit. We have complete control over all decision-making in the suit. And the intent of the parties in the amended and restated license agreement that's in the record is that Ridge Corporation has all substantial rights, and they do under the manufacturers, Your Honor. And the document filed in the docket that there was some reference to, it's in the district court docket at 63-1. And I wouldn't suggest that we look beyond the terms of the license agreement, Your Honor, but this document is reflective of the intent of the parties that Ridge Corporation gets all exclusive, all substantial rights to the patent. And what Cold Chain says in the signed document that's filed in the district court is that they disclaimed any ability to be involved in the action and that Ridge Corporation has complete control over the suit. Turning to the question of infringement, the district court seemed to agree that the centillion standard wasn't satisfied here, but then seemed to go on and say that somehow Akamai changes centillion. That seems to be odd. Do you agree that the centillion standard's not satisfied here? Your Honor, you're asking with respect to infringement? Yeah. I do not agree, Your Honor. Why not? Ridge Corporation showed a substantial likelihood of success on infringement. The evidence that's in the record... Centillion says that supplying software doesn't make you an infringer, direct infringer. And you haven't asserted induced infringement here. Why isn't that fatal to your infringement case? Your Honor, you're asking with respect to the contributory infringement defendant solely? Go ahead. With respect to the contributory infringement... I'm confusing. Go ahead. With respect to the claim construction and the question of the second outermost door. Yes, Your Honor. So on claim construction with the one argument, there's about six different claim construction arguments that the appellants make. One is that it is not the second outermost surface because outermost has to be the very farthest thing out. It's essentially what they argue. They had a patent attorney give opinion testimony about that. But in doing so, they tried to read the word second out of the claims. So the patent says first outermost surface. Then it says second outermost surface. And they say that it has to be the last surface, basically, in order to meet the claim language. But dependent claim nine specifically says you can have additional layers on top of that second outermost surface. It doesn't say on top of it. It says you can have an additional layer, claim nine. It doesn't say on top of it. Your Honor, it says that it would be directly after that second outermost surface. So, yes, it does say that it would be on top of it. Claim nine says that? Yes, Your Honor. It provides for additional layers, essentially. You have the first outermost surface, then the second outermost surface of insulating material, and then provides that additional layers can be added to that. So that's one of the arguments that they make. Claim nine says the insulated overhead door further comprising an additional membrane. It doesn't say on top of the foam layer. The additional membrane can only be there if it's on top of that second outermost surface foam layer, Your Honor. It can't float. So that's what it provides for. There are several other infringement arguments that are made. One was discussed during the second arguing counsel's position. There was discussion that- I want to take you back to the standing stuff again. Okay. Because you've said that you retain the ultimate right to settle. Anything? Where is that language coming from? In the amending of the restating licensing agreement, it says that- Is that page 266 of the appendix? Or is it a different part of the agreement? Yeah, it begins at 260. It's the cover page, Your Honor, and then goes on- What language are you referring to? Are you referring to the language that's at the top paragraph on page 8266? That is the section, Your Honor, that I'm looking at, yes. And what language in particular are you referring to? Is it down at the bottom, small room and numeral five? Yes, Your Honor. The final control- But doesn't that refer to cases where the licensee initiates and they can cooperatively do a case? It doesn't say anything about the first sentence, which is, both licensor and licensee shall have the right to initiate a patent infringement action. Your Honor- That sub five is part of a long list of conditions to how to allocate costs and recovery in the course of a litigation if the licensee initiates a joint action. Isn't that true? Your Honor, there's nothing in the agreement suggesting that Ridge would not retain this final say if Colchain were to initiate a suit. What do you mean by that? The plain language of this is it's part of a long paragraph talking about the licensee's actions. There's nothing about the licensor's actions. Why would you read a small subcomponent of one to control all actions under the agreement? I'm just going to follow up and say, you know, if you look at- this is one long sentence here that's on page 8266, and it says, if licensee initiates such action or the parties cooperatively initiate a joint action, and then it has all those things. It doesn't talk about the situation where the patent owner initiates the action alone. I understand, Your Honor. All it says about when somebody doesn't join is the non-initiating parties shall provide all cooperation reasonable. It doesn't say you get a veto power for a final settlement. Not in express language, Your Honor. We will maintain that we have all substantial rights necessary for standing under man. I do understand what the court is raising. I see the sentence there. It begins a serial list. But there's nothing saying that the cooperation from cold chain would not include deferring to the exclusive licensee's strategic decisions and settlement demands of any case. In almost every instance, Ridge Corporation could give out a sublicense that would separately nullify the suit. And the license agreement is very clear that Ridge has exclusive. If this goes back, are you going to get them included and joined? I'm sure that we would, Your Honor. So when did you do it in the first place? Because it seems like you've wasted a lot of our time coming up here when you should have just read our case law and seen that you wouldn't have had all substantial rights. We believe we do have all substantial rights. This is emergency litigation, and we filed this acknowledgement within weeks of filing the case in which cold chain and Ridge Corporation state this in writing their intent with respect to the amended and restated licensing agreement that Ridge Corporation would have all substantial rights with respect to the suit. The patentee objects to being joined? I'm sorry, Your Honor. The patentee objects to being joined? I don't know that they have an objection. They have no desire to be involved from a time standpoint. Their intent with respect to the amended and restated license agreement was to have an exclusive licensee in Ridge Corporation whose rights would be tantamount. Then they should have written one that gave you all substantial rights rather than the one we have. I mean, when there's language that says the licensor retains the right to sue, there's very, very few circumstances that that's a transfer of all substantial rights. We believe that we have all substantial rights, Your Honor. You may believe it, but when you look at our case law, that's not even a close question. If certainly if this court directs that Colchain needs to be joined to the suit, we'll do that. There's still infringement. Everything that was ruled upon by the district court correctly construed the claims and found that the three defendants were acting in concert, infringing upon Ridge Corporation's exclusive patent rights. They were false marking across the industry in which the products were being sold and saying they had a patent when they did not have a patent while they were infringing upon Ridge Corporation's patent rights. I can speak to any of the infringement issues, although the court doesn't seem interested in going through them. I can speak to any of them, though, but the district court did correctly construe the claims. And what you see in the arguments that appellants are raising with respect to the claims is the cardinal sin of trying to import limitations into the claims that aren't there,  Okay, I think we're out of time. Thank you. Thank you, Ron. We have one reply argument. Your Honors, with regard to standing, it is our position that there is no statutory standing for the reasons that you addressed. I would like to address one particular point with regard to the subs licensee. There is, under the circumstance we have here where K&L purchases panels from Altum, the license agreement between Cold Chain and Ridge would prohibit a sub license in this case. And so in the very instance that we have here, the agreement would not allow a sub license, meaning that the retained right to file an infringement suit is in no way illusory. And, Your Honor, you heard counsel say that they would seek to join Ridge in this case, and if this court, therefore, doesn't provide guidance to the district court on how to do a proper claim construction, we will be back up here on a preliminary injunction issue for this court to deal with it and address it. And that is not a good use of anyone's time, particularly this court, as it seems like it's a very busy court. And so we would ask that you look at our claim construction arguments, particularly that the door is rigid and inflexible, where the patent history specifically says that the material itself is flexible. And looking at the dependent claim for, which Ridge relies on, it even says that you can add depression gaps to make it more easily bend. Therefore, it presupposes that the door in of itself, without any ridges, without any grooves, bends. Ours does not, Your Honors. And in addition, the door is not insulating. We had evidence that the door had a very low insulating rate, less than one. The district court said we didn't. I think we're out of time. Okay. Thank you, Your Honors. Thank you all, counsel. The case is submitted. This concludes our session for this morning.